

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-12-00213-CR

CEDRIK PIERT                                                    APPELLANT

V.

THE STATE OF TEXAS                                                   STATE

----------

## FROM THE 367TH DISTRICT COURT OF DENTON COUNTY

----------

## **MEMORANDUM OPINION**[1]

----------

A jury convicted Appellant Cedrik Piert of delivery of less than one gram of cocaine in a drug-free zone.[2]  Upon his plea of true at the trial on punishment, the jury found the enhancement allegations true and assessed his punishment at

---

[1]*See* Tex. R. App. P. 47.4.

[2]*See* Tex. Health & Safety Code Ann. §§ 481.102(3)(D), .112(a)–(b) (West 2010), § 481.134(b), (d) (West Supp. 2013).

sixty-five years' confinement and a $10,000 fine. The trial court sentenced him accordingly.

In two issues, Appellant challenges the sufficiency of the evidence to support the jury's verdict of guilt of delivery of less than one gram of cocaine and the jury's verdict that he committed the offense within a drug-free zone. Because we hold that the evidence is sufficient to support the jury's verdict in both instances, we affirm the trial court's judgment.

## Summary of the Facts

Two police officers made an undercover buy of cocaine at a Valero gas station. One of the officers asked the suspect his name, and he replied that his name was Solo. After the purchase was complete, the suspect walked towards some apartments and into a breezeway. The undercover officers drove off and notified uniformed officers to make the arrest. The uniformed officers were delayed at a signal light, however, and when they arrived at the location where the suspect was last seen, they were unable to find him.

The next day, the undercover officers returned to the Valero station to look for the suspect. When they spotted Appellant, the officers called uniformed officers and gave them a description of him. When the uniformed officers arrived, they spoke with Appellant while the undercover officers drove down the same side of the street and identified him as the person from whom they had bought the cocaine the day before. One of the undercover officers, Detective Jennifer Mamola, obtained an arrest warrant, and Appellant was arrested.

**Sufficiency of the Evidence**

*Standard of Review*

In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[3] This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.[4]

The trier of fact is the sole judge of the weight and credibility of the evidence.[5] Thus, when performing an evidentiary sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder.[6] Instead, we determine whether the necessary inferences are reasonable based upon the cumulative force of the evidence when viewed in the light most favorable to the verdict.[7] We must presume that

---

[3]*Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Winfrey v. State*, 393 S.W.3d 763, 768 (Tex. Crim. App. 2013).

[4]*Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Blackman v. State*, 350 S.W.3d 588, 595 (Tex. Crim. App. 2011).

[5]*See* Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979); *Winfrey*, 393 S.W.3d at 768.

[6]*Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

the factfinder resolved any conflicting inferences in favor of the verdict and defer to that resolution.[8]

We measure the sufficiency of the evidence by the elements of the offense as defined by the hypothetically correct jury charge for the case, not the charge actually given.[9] Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried.[10] The law as authorized by the indictment means the statutory elements of the charged offense as modified by the factual details and legal theories contained in the charging instrument.[11]

### Delivery

In his first issue, Appellant contends that the evidence is insufficient to support his conviction for delivery of less than a gram of a penalty group 1 substance. He argues that conflicts in the testimony of the two undercover

---

[7] *Sorrells v. State*, 343 S.W.3d 152, 155 (Tex. Crim. App. 2011); *see Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013).

[8] *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Temple*, 390 S.W.3d at 360.

[9] *Byrd v. State*, 336 S.W.3d 242, 246 (Tex. Crim. App. 2011) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)); *see Crabtree v. State*, 389 S.W.3d 820, 824 (Tex. Crim. App. 2012) ("The essential elements of the crime are determined by state law.").

[10] *Byrd*, 336 S.W.3d at 246.

[11] *See Daugherty v. State*, 387 S.W.3d 654, 665 (Tex. Crim. App. 2013); *Curry v. State*, 30 S.W.3d 394, 404–05 (Tex. Crim. App. 2000).

officers undermine the sufficiency of the evidence, especially the identity of the seller of the cocaine. Both undercover officers testified at trial, and both identified Appellant as the man who sold them the cocaine. Detective Chau Nguyen testified that he knew that the suspect and Appellant were one and the same because on the day of Appellant's arrest, he wore the same clothes that the suspect had worn the previous day. Specifically, the person from whom the officers purchased drugs was a black male, a little over six feet tall and of a thin build, who was wearing a black or navy blue T-shirt and khaki or beige shorts and had a Bluetooth earpiece. Detective Mamola also testified that when Appellant was arrested, he was wearing the same clothes as the person from whom she had bought cocaine the previous night. She described the man as a black male, approximately six feet tall, who was wearing a black tank and jean shorts and had a Bluetooth earpiece.

A reviewing court must defer to the trier of fact's responsibility to resolve conflicts in testimony, such as two-way evidence, and to draw reasonable inferences from basic facts to ultimate facts.[12] We do not reevaluate the weight and credibility of the evidence. We only ensure that the jury reached a rational decision.[13] Considering the record as a whole, we must hold that the jury's

---

[12]*Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793.

[13]*Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009).

5

decision was rational and that the evidence is sufficient to support it. We overrule Appellant's first issue.

### *Drug-Free Zone Enhancement*

An offense otherwise punishable as a state jail felony under section 481.112 of the Texas Health and Safety Code is punishable as a third-degree felony if it is shown during trial that the offense was committed "in, on, or within 1,000 feet of . . . a public or private youth center."[14] A "[y]outh center" is "any recreational facility or gymnasium that . . . is intended primarily for use by persons who are 17 years of age or younger" and "regularly provides athletic, civic, or cultural activities."[15]

The indictment alleged in pertinent part that Appellant had delivered the cocaine to Detective Mamola "in, on, or within 1,000 feet of the premises of a private youth center, namely, ASI Gym, to-wit: 4051 Rosemeade Parkway, Dallas, Denton County, Texas." The facility is a gymnastics center where youth are taught to do gymnastics. The jury returned an affirmative finding regarding the drug-free zone special issue. The evidence, however, showed that the actual name of the facility was ASI Gymnasium and that it was located across the street from and within 1,000 feet of the Valero station, but it was in Collin County, not Denton County. In his second issue, Appellant contends that because it was

---

[14]Tex. Health & Safety Code Ann. § 481.134(b).

[15]*Id.* § 481.134(a)(7).

6

impossible for the State to prove its allegations, the evidence is insufficient to prove the offense enhancement allegation that the delivery occurred in a drug-free zone.

We see little difference between "Gymnasium" and "Gym." The slight variation between the name of the facility and its name on the indictment is sufficiently similar to slight variations in names of complainants to fall within the same applicable rule. In *Fuller v. State*,[16] the indictment alleged that the defendant committed the offense against "Olen M. Fuller," who was his father. The prosecution proved that the defendant injured his elderly father by hitting him in the face with his fist. During trial, however, the father was referred to only as "Mr. Fuller" or as "Buddy." The prosecution presented no evidence that the father was "Olen M. Fuller." Consistent with the indictment's allegation, the jury charge instructed the jury to convict if it found that appellant committed the offense against "Olen M. Fuller." The Texas Court of Criminal Appeals explained,

> The federal constitutional issue in this case is whether the victim's name is a substantive element of the criminal offense as defined by state law. State law, in relevant part, defines "element of the offense" as the forbidden conduct with the required culpability. State law in Section 22.04(a)(3) further defines the offense as "injury to an elderly individual." State law does not define the victim's name as a substantive element of the offense by, for example, defining the offense as "injury to an elderly individual named Olen M. Fuller."

---

[16]73 S.W.3d 250, 251 (Tex. Crim. App. 2002).

The prosecution's failure to prove the victim's name exactly as alleged in the indictment does not, therefore, make the evidence insufficient to support appellant's conviction under *Jackson v. Virginia*. The evidence that appellant injured the elderly victim by hitting him in the face with his fist satisfies the *Jackson v. Virginia* standard because it constitutes proof of every fact necessary to constitute the crime charged of "injury to an elderly individual."

We must now decide whether the evidence was sufficient to support appellant's conviction under *Gollihar's* state law sufficiency standard. In addressing this claim, we must recognize that *Gollihar* also decided that a materiality inquiry should be made in all cases, like this one, that involve a "sufficiency of the evidence claim based upon a variance between the indictment and the proof" and that only a "material" variance will render the evidence insufficient. In making a materiality inquiry applicable to all variance cases, *Gollihar* criticized our decision in *Pedrosa v. State*, a similar variance case, which did not apply a materiality inquiry to the prosecution's failure to prove the victim's name exactly as alleged in the indictment.

*Gollihar* also decided that this "materiality" inquiry requires a determination of whether the variance deprived the defendant of notice of the charges or whether the variance subjects the defendant to the risk of later being prosecuted for the same offense. And, finally, *Gollihar* also decided that a "hypothetically correct jury charge" takes into consideration the material variance doctrine, meaning that "[a]llegations giving rise to immaterial variances may be disregarded in the hypothetically correct charge, but allegations giving rise to material variances must be included."

In this case, the prosecution's failure to prove the victim's name exactly as alleged in the indictment does not make the evidence insufficient under *Gollihar*. The victim's name is not a statutory element of the offense.[17]

If the State can go that far wrong in proving the name of the complainant, and if the name of the complainant is so completely irrelevant to the pleading and the proof, we would be hard-pressed to hold that pleading "Gym" rather than

---

[17] *Id.* at 252–54 (citations and footnotes omitted).

8

"Gymnasium" in the name of a youth center that provides the drug-free zone element of an enhancement paragraph is sufficiently significant to require reversal of the conviction. Had there been evidence of another location with a similar name that qualified as a youth center but that was outside the 1,000-foot zone, our analysis perhaps would have been different. Here, there is nothing to suggest that pleading the wrong name deprived Appellant of notice of the charge against him, caused so much confusion that it impinged on his ability to prepare an adequate defense at trial, or subjected him to being prosecuted again for the same offense.[18]

The variance between the county alleged as the location of the youth center (Denton) and the evidence of the actual county in which the youth center is located (Collin) is likewise immaterial, given that (1) the street address of the youth center was provided in the indictment and (2) there was no evidence that another youth center was located within 1,000 feet of the Valero gas station where Appellant sold cocaine to the undercover officers.[19] Consequently, we are compelled to overrule Appellant's second issue.

---

[18]*See id.*

[19]*See id.*; *Drouillard v. State*, No. 02-04-00097-CR, 2005 WL 737019, at *1 (Tex. App.—Fort Worth Mar. 31, 2005, no pet.) (mem. op., not designated for publication) (holding variance between enhancement allegation elevating driving while intoxicated to a felony and the evidence thereof immaterial when Drouillard could not have been misled that State was alleging a different offense and the proof of the cause number, date, and trial court related to the enhancing offense matched the allegation).

9

**Conclusion**

Having overruled Appellant's two issues on appeal, we affirm the trial court's judgment.

/s/ Lee Ann Dauphinot
LEE ANN DAUPHINOT
JUSTICE

PANEL:  DAUPHINOT, MCCOY, and MEIER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  June 5, 2014